Kelli J. Keegan
Barnhouse Keegan Solimon & West LLP
7424 4th Street NW
Los Ranchos de Albuquerque, NM 87107
Telephone: (505) 842-6123
Facsimile: (505) 842-6124
Email: kkeegan@indiancountrylaw.com

Thomas E. Luebben
Law Offices of Thomas E. Luebben PC
21 Star Splash
Santa Fe, NM 87506
Phone: 505-269-3544
Email: tluebbenlaw@msn.com
*Pro Hac Vice Pending*

*Attorneys for Plaintiffs*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| Michael Hill, President | ) | |
| Crow Allottees Association | ) | |
| 176 Hill Lane | ) | |
| Lodge Grass, MT 59050 | ) | |
| | ) | |
| Senator Jason Kills Pretty Enemy | ) | Cause No. <u>1:22-CV-01781</u> |
| Crow Tribe Legislative Representative | ) | |
| Arrow Creek District | ) | |
| 4106 Pryor Gap Rd. | ) | |
| Pryor, MT 59066 | ) | **COMPLAINT** |
| | ) | |
| Alee Birdhat | ) | |
| 158 High Eagle Ave | ) | |
| Crow Agency, MT 59022 | ) | |
| | ) | |
| Leeya Biglake Hill | ) | |
| P.O. Box 1132 | ) | |
| Crow Agency, MT 59022 | ) | |
| | ) | |
| Abby Birdhat | ) | |
| 158 High Eagle Ave | ) | |
| Crow Agency, MT 59022 | ) | |
| | ) | |
| Francis White Clay | ) | |

```
135 Cindy Dr.                          )
Crow Agency, MT 59022                  )
                                       )
                 Plaintiffs,           )
                                       )
v.                                     )
                                       )
THE UNITED STATES DEPARTMENT           )
OF THE INTERIOR; DEB HAALAND,          )
in her official capacity as United States   )
Secretary of the Interior, and BRYAN   )
NEWLAND, in his official capacity as   )
Assistant United States Secretary of the   )
Interior for Indian Affairs            )
1849 C Street N.W.                     )
Washington, D.C. 20240                 )
                                       )
                 Defendants.           )
_____)
```

## I.    NATURE OF CASE.

1.     This is an action under the Administrative Procedures Act, 5 U.S.C 701 et seq., for declaratory relief to declare the June 22, 2016, publication by the Interior Secretary in the Federal Register of the "Statement of Findings: Crow Tribe Water Rights Settlement Act of 2010," causing certain waivers and releases of claims to become effective and, as required by the Act ("2010 Settlement Act"), purporting to establish the enforcement date of the Act; premature and void and of no effect as a matter of law, and for injunctive relief against further implementation of the 2010 Settlement Act and the 1999 Crow – Montana Water Compact ("1999 Compact").

2.     The Crow Tribe is a federally recognized tribe in eastern Montana. The Fort Laramie Treaty of 1868 recognized eight million acres of land as belonging to the Crow Tribe and provided for individual tribal member allotments.

3.     In 1891, via an act of Congress, the Crow Tribe ceded two million acres of land to

the federal government ("Ceded Strip"). Crow tribal members were permitted to hold allotments on the ceded portion. In 1904, the federal government reduced the size of the Crow reservation to 2.3 million acres, its present size.

4.    The 1920 Crow Allotment Act allotted the remaining Crow reservation lands into individual tracts to be held in trust by the United States for every enrolled member of the Crow Tribe.

5.    Pursuant to the allotment statutes and the federal common law Winters Doctrine, individual Indian trust allottees were partitioned a portion of the Crow Reservation water right sufficient to irrigate the practicably irrigable acres ("PIA") on each allotment as an appurtenant, expansive, marketable real property water right with a senior priority of 1868.

6.    The 2010 Settlement Act seeks to expropriate and recollectivize the Crow allottees' individual appurtenant Winters Doctrine Indian water rights under Crow tribal ownership and control without compliance with the United States Constitution's Fifth Amendment requirements of due process of law, public purpose and just compensation.

7.    While the 2010 Settlement Act purports to extinguish the Winters Doctrine Indian water rights appurtenant to Crow individual Indian trust allotments and to abandon the senior Indian water rights priority established by the 1868 Treaty of Fort Laramie, in the 22 years since its passage the Act has failed to deliver its promised benefits to the Crow Tribe and the Crow allottees.

8.    The 1999 Compact mandates the preparation of "Appendix I" listing all water uses (exercised water rights) on the Crow Reservation, including the uses of the allottees. It was to be the basis for the current allocation of water among users on the Reservation and for determining which Indian water uses (rights) were developed prior to 1999 and are therefore not

junior to post-1999 developed uses on the Reservation. Appendix I has never been compiled.

9.     The 2010 Settlement Act requires the Tribe to adopt a Tribal Water Code, including a licensing and permitting system governing the allocation and distribution of the tribal water right on the Reservation, for approval by the Interior Secretary "within a reasonable period of time." A Crow Tribal Water Code has never been adopted by the Tribe or approved by the Secretary. Consequently, allottees' "right" to use a share of the tribal water right remains undefined, whereas the allottees' marketable Winters Doctrine Indian real property water rights are to have been extinguished by the Act without due process of law, just compensation, or for a public purpose as required by the Fifth Amendment.

10.     The federal government has a binding fiduciary responsibility to individual Crow allottees for the protection of their allotments and appurtenant Winters Doctrine Indian water rights held in trust by the United States. At all times relevant to this lawsuit the United States has been subject to egregious conflicts of interest with respect to its trust obligations to the Crow allottees and unable to fulfill its fiduciary duties to them.

11.     As a result of its pervasive conflicts of interest, the United States has been and is unable to fulfill its duties to protect the Crow allottees Winters Doctrine Indian water rights and has sought to extinguish those rights without notice to the allottees or lawful adjudication in violation of the Fifth Amendment.

12.     As a matter of federal common law, and due to its egregious conflicts of interest, the United States was obligated to provide the Crow allottees with independent legal counsel to assert and protect their rights during litigation of *United States v. Horn Low Line Canal, et al.*, and "*In the Matter of the Adjudication of Existing and Reserved Rights to the Use of Water, Both Surface and Underground, of the Crow Tribe of Indians of the State of Montana*" before the

Montana Water Court, and the negotiation of the 1999 Compact and the 2010 Crow Settlement Act.

## II.      JURISDICTION AND VENUE

13.     The Court has jurisdiction over this action pursuant to 5 U.S.C. § 701 *et seq.* (providing for judicial review of federal agency action under the Administrative Procedure Act) and 28 U.S.C. § 1331 (providing jurisdiction over federal questions). The Allottees have exhausted all administrative remedies available to them.

14.     Venue is proper in this district pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims herein occurred within this judicial district.

## III.     PARTIES

15.     Plaintiff Michael Hill is an enrolled member of the Crow Tribe and holds a majority real property interest in Allotment No. 1833, consisting of 720 acres, and several other allotments, including irrigated parcels. Mr. Hill also holds fractional interests in several other allotments on the Crow Reservation. Mr. Hill currently serves as the President of the Crow Allottees Association.

16.     Plaintiff Senator Jason Kills Pretty Enemy is an enrolled member of the Crow Tribe and currently serves in the Crow Nation Legislature as a Representative from the Arrow Creek District. Senator Kills Pretty Enemy holds real property interests in several individual Indian trust allotments on the Crow Reservation, including irrigated parcels.

17.     Plaintiff Alee Birdhat is an enrolled member of the Crow Tribe and holds real property interests in several individual Indian trust allotments on the Crow Reservation, including irrigated parcels.

18.     Ms. Birdhat also serves as the Vice-President of the Crow Allottees Association

19.     Plaintiff Leeya Biglake Hill is an enrolled member of the Crow Tribe and holds real property interests in several individual Indian trust allotments on the Crow Reservation, including irrigated parcels.

20.     Plaintiff Abby Birdhat is an enrolled member of the Crow Tribe and holds real property interests in several individual Indian trust allotments on the Crow Reservation, including irrigated parcels.

21.     Plaintiff Francis White Clay is an enrolled member of the Crow Tribe and holds real property interests in several individual Indian trust allotments on the Crow Reservation, including irrigated parcels.

22.     Defendant United States Department of the Interior is the federal agency charged with administering the Bureau of Indian Affairs, which directly administers the laws and regulations applicable to individual Indians and the real property interests of tribes and individual Indians in individual Indian trust allotments and water rights appurtenant to individual Indian trust allotments.

23.     Defendant Secretary of the Interior Deb Haaland is the federal official responsible for proper administration of the Interior Department and the Bureau of Indian Affairs and is the principal official responsible for upholding the federal government's fiduciary duties as trustee over individual Indian trust allotments and water rights and other resources appurtenant to such allotments.

24.     Defendant Assistant Secretary of the Interior for Indian Affairs Bryan Newland is the federal official directly responsible for the administration of the Bureau of Indian Affairs and for administering all laws and regulations applicable to Indian affairs, Indian tribes and

6

individual Indians and their real property held in trust by the United States, including the faithful execution of the United States' fiduciary duties and trust obligations with respect to such property.

## IV.   STATEMENT OF FACTS

25.      Pursuant to the Fort Laramie Treaty of 1868, the General Allotment Act of 1887, and the Crow Act of 1920, the United States allotted tribal lands on the Crow Indian Reservation in Montana to individual Crow tribal members. Approximately 5,000 Crow Indians (the "allottees") hold Winters Doctrine marketable real property interests in water rights appurtenant to their individual Indian trust allotments on or near the Crow Reservation pursuant to the 1851 and 1868 Treaties of Fort Laramie, the 1887 General Allotment Act, the 1920 Crow Allotment Act, and federal common law.

26.      Pursuant to the allotment statutes and the federal common law Winters Doctrine, the Allottees hold water rights for all practically irrigable acreage ("PIA") on their allotted lands, whether they have historically irrigated all of that acreage or not.

27.      Approximately 11% of the Crow Indian Reservation is unallotted and owned by the Crow Tribe. The Crow Tribe owns additional lands in the form of individual Indian allotments it has reacquired. Approximately 46% of the Crow Reservation is owned by 5,000 allottees as individual Indian trust allotments.

28.      On April 17, 1975, the United States, in its own right and as a fiduciary on behalf of the Crow Tribe and individual Indian trust allotment landowners, filed *United States v. Big Horn Low Line Canal, et al.* seeking a declaration of the rights of the United States, the Crow Tribe, and the allottees in and to the use of the waters of the Tongue River, the Big Horn River, the Little Big Horn River, Pryor Creek, Sage Creek, Tullock Creek, Sarpy Creek, within the

7

State of Montana, and all tributaries thereto.

29.     In 1979 the Montana Legislature amended the Montana Water Use Act to create the Montana Water Court. The Water Court was given jurisdiction over all water rights claims and adjudications in the state.

30.     The 1979 Montana Legislature also created the Montana Reserved Water Rights Compact Commission as part of the state-wide general stream adjudication. The Commission's mission is to negotiate settlements with Montana Indian tribes and federal agencies which claim federal reserved water rights within Montana to quantify those rights. Mont. Code Ann. § 2-15-212.

31.     The Crow Tribe, the United States, and the State of Montana negotiated the 1999 Crow Compact over a period of more than twenty years without providing for the participation of any designated allottees' representatives or counsel for the allottees.  The 1999 Compact was ratified by the 1999 Montana Legislature and amended in 2009. Mont. Code Ann. § 85-20-901.

32.     The 1999 Crow Compact and the 2010 Settlement Act seek to expropriate and recollectivize allottees' real property interests in water rights appurtenant to their allotments -- created by the 1887 General Allotment Act and the 1920 Crow Allotment Act -- for the benefit of the Crow Tribe, the United States and non-Indian water users in violation of the United States Constitution's Fifth Amendment prohibitions on the taking of private property without due process of law, a public purpose and just compensation.

33.     On November 30, 2010, the United States Congress ratified the Crow Compact by enacting the Crow Tribe Water Rights Settlement Act of 2010 P.L. 111-291 (Nov. 30, 2010) (Title IV of Claims Resolution Act of 2010) (hereinafter "Settlement Act"). President Barack Obama signed the Settlement Act on Dec. 8, 2010.

34.     In spite of the lack of a tribal water code or tribal water rights system and the fact

that the allottees own far more land on the Crow Reservation than the Tribe, the 1999 Crow

Compact and the 2010 Settlement Act allocate all of the reserved water rights on the Crow

Indian Reservation to the Tribe.

35.     Settlement Act § 410(a)(2) purports to allow the United States as trustee for the

allottees to waive and release all of allottees' claims for water rights.

> (2) WAIVER AND RELEASE OF CLAIMS BY THE UNITED STATES
> ACTING IN ITS CAPACITY AS TRUSTEE FOR ALLOTTEES.— … in return
> for recognition of the water rights of the Tribe and other benefits as set forth in the
> Compact and this title, the United States, acting as trustee for allottees, is authorized
> and directed to execute a waiver and release of all claims for water rights within the
> Reservation and the ceded strip that the United States, acting as trustee for the
> allottees, asserted, or could have asserted, in any proceeding, including the State of
> Montana stream adjudication, prior to and including the enforceability date, except
> to the extent that such rights are recognized in the Compact or this title.

36.     On March 19, 2011, the Crow Tribe ratified the 1999 Compact as required by §

410(e)(1)(E)(1) of the Settlement Act.

37.     The Settlement Act § 407(f)(1) required the Crow Tribe to adopt a tribal water

code within three years after tribal ratification of the 1999 Crow Compact, or by March 19, 2014.

No tribal water code has been adopted by the Crow Tribe. No remedies are available to the

allottees under the tribal water code or other applicable tribal law.

38.     Settlement Act § 407(f)(3) further requires the Interior Secretary to approve the

tribal water code "within a reasonable period of time after … the Tribe submits it to the

Secretary."

39.     On April 27, 2012, Interior Secretary Salazar signed the 1999 Crow Compact on

behalf of the United States.

40.     On December 21, 2012, the Montana Water Court issued a Notice of Entry of

Crow Tribe – Montana Compact Preliminary Decree constituting a preliminary water rights decree for the Crow Reservation water basins. The Court set a deadline of June 24, 2013, subsequently extended to September 23, 2013, for filing objections to the preliminary decree.

41.     Several dozen Crow individual Indian trust allotment owners timely filed objections to the Montana Water Court's Preliminary Decree.

42.     On May 15, 2014, the Crow Allottees Association and dozens of individual allottees filed an action in United States District Court (*Crow Allottees Association, et al. v. Department of the Interior, et al.*) seeking broad equitable relief, including declaratory and injunctive relief, against the Interior Department, the Secretary of the Interior and the Bureau of Indian Affairs for violations of the fiduciary obligations of the United States to individual Indian trust allotment landowners by implementing the 1999 Crow-Montana Compact and the 2010 Settlement Act by failing to protect and preserve, and waiving and releasing, the allottees' real property interests in water rights appurtenant to their allotments without notice, due process of law, or consent in violation of their fiduciary duties; and failing to provide adequate legal counsel to the allottees.

43.     On May 15, 2014, 43 individual Crow Indian trust allotment landowners who had timely filed objections in the Montana Water Court to the December 21, 2012, preliminary decree filed a motion seeking a stay of the Montana Water Court proceedings pending resolution of their claims in their federal lawsuit, *Crow Allottees Association, et al. v. Department of the Interior, et al.*, alleging that the United States violated its fiduciary duties to protect water rights appurtenant to their allotments and violated their constitutional and statutory rights to real property.

44.     Throughout the long history of negotiating this compact, the United States has

10

represented to the allottees in various communications that their interests were fully represented by the United States.

45.     In the Montana Water Court, the Montana Supreme Court, the District Court for Montana, and the Ninth Circuit Court of Appeals the United States consistently asserted it "adequately represented the allottees." To the contrary, it had not provided adequate legal representation to the individual allottees at all and generally refused or avoid meeting with allottees and allottees representatives., Further, in at least one instance by letter of November 8, 2001 the Montana Water Court advised an allottee who had filed a claim in the Montana Water Court to take no further action because the United States was taking care of her rights in the 1999 Compact and that "[y]our mother's claim …is based on the Tribe's reserved water and I is unclear how that claim might be affected by the Tribe's water compact which is currently being negotiated. Therefore, it appears the best course is to let this case sit until the Compact is completed."

46.     The Montana Water Court summarily denied all of the Crow allottees' objections on July 30, 2014, and their request for a stay on the grounds that "[a]llottees do not own a portion of the Tribe's Winters [Doctrine] rights. Accordingly, they were not entitled to receive separate notice of the Compact under statutes providing for such notice …." The allottees appealed to the Montana Supreme Court.

47.     On June 30, 2015, the federal district court in *Crow Allottees Association, et al. v. Department of the Interior, et al.*, granted the federal defendants judgment on the pleadings on the grounds of lack of jurisdiction. The Court held that there was no waiver of the sovereign immunity of the United States under the APA because there was no final agency action to challenge under 5 U.S.C. § 706. The plaintiffs appealed to the Ninth Circuit Court of Appeals.

48.     On July 30, 2015, the Montana Supreme Court affirmed the Water Court's denial of the allottees' objections and the allottees motion for a stay on the grounds the allottees' do not hold real property interests in water rights appurtenant to their allotments, but rather a "tribal derivative" right, and allottees' rights to a "just and equal portion of the Tribal Water Right" are recognized by the 1999 Compact.

49.     Settlement Act § 410(e) states that the enforceability date shall be the date on which the Secretary publishes in the Federal Register a statement of findings that seven specific contingencies have been satisfied.

50.     Settlement Act § 410(e)(1)(A) requires that:

> (A)(i) the Montana Water Court has issued a final judgment and decree approving the Compact; or

> (ii) if the Montana Water Court is found to lack jurisdiction, the district court of jurisdiction has approved the Compact as a consent decree and such approval is final; ….

51.     Settlement Act § 403(7) defines

> "FINAL.—The term ''final'' with reference to approval of the decree described in section 410(e)(1)(A), means—

> (A) completion of any direct appeal to the Montana Supreme Court of a decree by the Montana Water Court …; or

> (B) completion of any appeal to the appropriate United States Court of Appeals, …, whichever occurs last.

52.     On June 22, 2016, the Interior Secretary published a "Statement of Findings" in the Federal Register including the following:

> 1.  The Montana Water Court has issued a final judgment and decree approving the Compact; ….

53.     Once the Montana Water Court decree is final, Montana will recognize Crow Indian water rights as belonging exclusively to the Crow Tribe. It will not recognize any real

property interests in water rights appurtenant to individual Indian trust allotments as belonging to individual allottees.

54.     On June 28, 2017, the Ninth Circuit Court of Appeals issued a Memorandum Opinion in *Crow Allottees Association v. Bureau of Indian Affairs*, No. 15-35679 on appeal (D.C. No. 1:14-cv-00062-SPW) (United States District Court for Montana, Billings). The Court of Appeals noted that since the District Court's dismissal of the case the waivers of rights provided in the 2010 Settlement Act had gone into effect (June 22, 2016, Federal Register publication) constituting final agency action under the Administrative Procedures Act. However, the Court affirmed the District Court's dismissal on the alternative grounds that the plaintiffs failed to state a claim on which relief could be granted because the 1999 Crow Compact and the 2010 Settlement Act waivers were in effect.

## COUNT I

### ADMINISTRATIVE PROCEDURES ACT CHALLENGE TO STATUTORY VIOLATION

55.     Plaintiffs reallege paragraphs 1 through 52 as though fully stated herein.

56.     The Interior Secretary's June 22, 2016, publication in the Federal Register purporting to establish the Crow Tribe Water Rights Settlement Act of 2010 enforcement date on the basis that all of the conditions required by § 410(e) for the Act's water rights waivers to become effective are met was more than one year and three months premature. Settlement Act §§ 410(e)(1)(B) and 403(7) did not allow such publication until September 27, 2017, at the earliest. The publication is therefore void and of no effect and the waivers and releases of the allottees' water rights provided in § 410(a)(2) are void and of no effect.

## COUNT II

### VIOLATION OF THE ALLOTTEES' FIFTH AMENDMENT CONSTITUTIONAL

### RIGHTS TO DUE PROCESS OF LAW, PUBLIC PURPOSE, AND JUST COMPENSATION

57.     Plaintiffs reallege paragraphs 1 through 52 and 54 as though fully stated herein.

58.     Under federal common law and Montana statutory law, a water right is a real property right. The Montana and United States Constitutions provide protection from expropriation for the plaintiff Crow allottees' Winters Doctrine real property rights in water appurtenant to their individual Indian trust allotments on the Crow Reservation.

59.     The Fifth Amendment to the United States Constitution provides in relevant part that "[n]o person shall … be deprived of … property, without due process of law; nor shall private property be taken for public used, without just compensation." The publication of the Crow Tribe Water Rights Settlement Act of 2010 enforcement date in the Federal Register on June 22, 2016, purported to effect an expropriation and extinguishment of the Crow allottees' Winters Doctrine marketable real property water rights appurtenant to their allotments on the Crow Reservation without notice, due process of law, just compensation, or for a public purpose in violation of the United States and Montana Constitutions.

### COUNT III

### VIOLATION OF THE UNITED STATES' FIDUCIARY DUTIES TO PROTECT CROW INDIAN ALLOTTEES' REAL PROPERTY INTERESTS IN MARKETABLE INDIAN WINTERS DOCTRINE WATER RIGHTS APPURTENANT TO THEIR ALLOTMENTS.

60.     Plaintiffs reallege paragraphs 1 through 52, 54, 56 and 57 as though fully stated herein.

61.     The United States holds real property interests in Indian Winters Doctrine water rights appurtenant to individual Indian trust allotments in trust for Crow allottees subject to extensive federal control through statutes, regulations and stated administrative policies.  As

14

trustee, the United States has a fiduciary duty to protect the Crow allottees' property rights in water from trespass and adverse appropriation by non-Indians.

62.     The United States has a fiduciary duty to identify and quantify Indian Winters Doctrine rights appurtenant to each of the individual Indian trust allotments on the Crow Reservation.

63.     The United States and the Crow Tribe negotiated and concluded the 1999 Crow Water Compact and the Crow Tribe Water Rights Settlement Act of 2010 with no notice to, consent from, legal representation on behalf of, or participation by the Crow allottees.

64.     The United States as trustee failed to determine the extent of the marketable water rights held by each individual Indian trust allotment landowner on the Crow Reservation as required by the 1999 Compact.

65.     The United States, acting as trustee for the Crow allottees, surrendered the Crow allottees' individual Winters Doctrine Indian water rights to the Crow Tribe and non-Indian landowners without notice to the allottees or their participation or consent. It failed to protect Allottees' individual water rights by requiring adjudication of individual water rights.

66.     At no time did representatives of the United States or the Interior Department consult with the allottees about the extent of their allotted land, their historically irrigated or irrigable property, or their domestic and stock-watering uses and requirements.

67.     At no time were the allottees represented by legal counsel in negotiations with the state of Montana, the United States or Crow Tribe.

68.     The Allottees have not been represented by legal counsel during the Montana Water Court proceedings related to the Crow Compact which resulted in a final water rights decree incorporating the Crow Compact. Allottees were told by Interior Department

representatives not to file independent water rights claims before the Montana Water Court as required by Montana law and were assured by such representatives that their interests were being protected by the United States as their trustee.

69.     Section 410(a)(2) of the Settlement Act provides that the United States, as trustee for the allottees, "is authorized and directed to execute a waiver and release of all claims for water rights within the Reservation and the  ceded strip that the United States, acting as trustee for the allottees, asserted, or could have asserted, in any proceeding, including the State of Montana stream adjudication, prior to and including the enforceability date, except to the extent that such rights are recognized in the Compact or this title" "in return for recognition of the water rights of the Tribe."  The Interior Secretary executed such waivers and releases on April 17, 2012, without notice, due process of law, or consent by the allottees, and in violation of the United States' fiduciary duty to protect the allottees' property rights. By this action, the allottees are divested of a valuable, marketable property right and are receive no consideration in return.

**PRAYER FOR RELIEF**

WHEREFORE, the Crow allottee plaintiffs respectfully request that the Court order judgment as follows:

A.     Issue a declaratory judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. 2201, that the June 22, 2016, publication of the enforcement date of the 2010 Crow Settlement Act is void and of no effect.

B.     Issue a declaratory judgment that the Crow allottees hold marketable real property interests in Winters Doctrine water rights appurtenant to their allotments on the Crow Indian Reservation and in the Ceded Strip.

C.     Issue a declaratory judgment that the United States violated its fiduciary

16

obligation to the allottees and failed to protect their marketable real property interests in Winters

Doctrine water rights appurtenant to their allotments by purporting to waive and release their

water rights by publication of the 2010 Settlement Act enforceability date on June 22, 2010.

      D.    Enjoin any further actions by the Interior Secretary to implement the 1999 Crow

Compact and the 2010 Settlement Act.

      E.    Award the allottees attorneys' fees and other litigation costs reasonably incurred

in this action; and

      F.    Grant the allottees such other relief as the Court deems just and proper.

DATED this June 21, 2022.              Respectfully Submitted,

                                */s/ Kelli J. Keegan*
                                Kelli J. Keegan
                                Barnhouse Keegan Solimon & West LLP
                                7424 4th Street NW
                                Los Ranchos de Albuquerque, NM 87107
                                Telephone: (505) 842-6123
                                Facsimile: (505) 842-6124
                                Email: kkeegan@indiancountrylaw.com

                                Thomas E. Luebben
                                Law Offices of Thomas E. Luebben PC
                                21 Star Splash
                                Santa Fe, NM 87506
                                Phone: 505-269-3544
                                E-Mail: tluebbenlaw@msn.com
                                *Pro Hac Vice Pending*